In re MONTAGUE STREET IN BOROUGH OF BROOKLYN IN CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. October, 1914.)

1. EMINENT DOMAIN (§ 198*)—STREETS—TAKING OF PROPERTY—OBJECTION—PROCEDURE.

Where an application is made by a city for an order appointing commissioners of estimate and assessment for the opening of a street, objecting property owners are entitled to be heard and to have their liability determined prior to the appointment of commissioners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 525, 526, 528, 535–539; Dec. Dig. § 198.*]

2. EMINENT DOMAIN (§ 166*)—STREETS—TAKING OF PROPERTY—"STREET PURPOSE"—"MUNICIPAL PURPOSE"—"BUSINESS ENTERPRISE."

The building of a subway by a city is a "business enterprise" and a "municipal purpose," and not a "street purpose," such as will authorize the city to acquire title under the guise of a street opening proceeding.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 448–450, 456; Dec. Dig. § 166.*

For other definitions, see Words and Phrases, First and Second Series, Municipal Purposes.]

3. CONSTITUTIONAL LAW (§ 290*)—DUE PROCESS—STREETS—ACQUISITION OF TITLE—ASSESSMENT.

An application by the city of New York for the appointment of commissioners of estimate and assessment for the legal opening of a street, involving the acquisition of title in fee to land for subway purposes, pursuant to a resolution of the board of estimate and apportionment, adopted under Greater New York Charter (Laws 1901, c. 466) § 970, will be de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nied, as an attempt to take property without due process of law, where it appears that objecting property owners would not be benefited by the improvement.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

Application by the City of New York for an order appointing commissioners of estimate and assessment for the legal opening of Montague Street in the Borough of Brooklyn, City of New York. Denied.

Frank L. Polk, Corp. Counsel, of New York City (Melville J. France, of Brooklyn, of counsel), for applicant.

Dykman, Oeland & Kuhn, of Brooklyn (Edgar M. Cullen, of Brooklyn, of counsel), for Brooklyn Trust Co. and others.

Wingate & Cullen, of New York City, for People's Trust Co.

Suffren, Humphreys & Orr, for Brooklyn Club.

Dean, Tracy & McBarron, of New York City, for Lawyers' Title Insurance & Trust Co.

Lynn C. Norris, of Brooklyn, for Title Guarantee & Trust Co.

Blandy, Mooney & Shipman, of New York City, for Catherine S. Drier.

Simeon B. Chittenden, of New York City, for Church of the Pilgrims.

Owens, Gray & Tomlin, of Brooklyn, for Mechanics' Bank of Brooklyn.

McKeen, Brewster & Morgan, of New York City, for Franklin Trust Co. and others.

Francis L. Archer, of Brooklyn, for New York Title Ins. Co. and others.

ASPINALL, J. This is an application made by the city of New York for an order appointing commissioners of estimate and assessment for the legal opening of Montague street for street purposes.

The board of estimate and apportionment of the city of New York adopted a resolution, pursuant to the provisions of section 970 of the Greater New York Charter, as amended, deeming it for the public interest that the title to the lands and premises required for the opening and extending of Montague street, at a width of 50 feet, from Court street to a point 275 feet west of Hicks street, the said 50 feet comprising all of the area located within a distance of 25 feet on each side of the center line of the street, and also opening and extending Montague street to its full width, as laid out upon the map of the city, from a line 275 feet west of Hicks street to the United States bulkhead line, in the borough of Brooklyn, city of New York, should be acquired by the city of New York; and it was further resolved, that the title to be so acquired was a title in fee to such premises.

[1] The property holders, within the area of assessment, object to the granting of this application, upon the ground that Montague street is already an open street, and that it is being used for all street purposes, and for the reason that the city in this proceeding cannot ob-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tain a single use in this street, for strictly street purposes, which it does not already possess therein, and also for the additional reason that no benefit will accrue to them by the granting of this application, and hence that this proceeding is entirely superfluous and unnecessary.

It is claimed by the learned corporation counsel that the objecting property owners are not properly before the court at this time. I am satisfied, notwithstanding section 981 of the Greater New York Charter, that now is the accepted time for the property owners to make known their objections, if any. I am of opinion that if any question is raised as to the right of the city to take the property, under this application for the appointment of commissioners, the property owners raising the question have the right to be heard and their liability determined prior to the appointment thereof.

Where a preliminary question is raised, which goes to the substantials, as to the right of the petitioner to maintain these proceedings, I am convinced that such question should be determined before the assessment for damages is entered upon. See Matter of the Mayor, 22 App. Div. 124, 47 N. Y. Supp. 965; Matter of the City of New York (Neponsit Avenue) 77 Misc. Rep. 246, 135 N. Y. Supp. 708.

It appears from the map submitted by the city that Montague street, from Court street to 275 feet west of Hicks street, was dedicated to the city of Brooklyn for street purposes many years ago, and that said portion of the street was taken over by the city of New York subsequently to consolidation; that the portion of the street immediately adjacent to the above was ceded to the city of New York in the year 1912; and that the title to the remainder of the said street, at the foot of the hill, is claimed to be in the estate of Henry E. Pierrepont, deceased.

It appears from the evidence taken before the referee that, prior to the adoption of the resolution by the board of estimate, as aforesaid, considerable negotiations were had wherein the availability of Montague street for subway purposes was considered by the city officials, and it also appears that a contract has been actually awarded for the building of such a subway.

The objecting property owners contend that, as the greater portion of Montague street is and has been open for a long period of time, during all of which time it has been used for all purposes consistent with street uses, this proceeding is entirely unnecessary as to the dedicated and ceded portions of the street, and that the city cannot acquire any more interest as to these portions of the said street, for strictly street purposes, under this proceeding, than it already possesses, and hence that the proceeding is unauthorized and void.

The city has had absolute control of the said street, at least so far as the said portions are concerned, for many years, and I cannot see that it will be placed in any better position, so far as the use of the said portions for street purposes is concerned, than it now occupies, should this application be granted. Certainly no street opening proceeding can confer upon the city any greater interest in the said dedicated and ceded portions of the street for strictly street purposes than it now enjoys. To my mind this contention is absolutely irrefutable.

[2] It also appears from the evidence that the learned counsel for the objecting property owners endeavored to ascertain from the learned corporation counsel what uses could be acquired in these portions of the said street for street purposes, through this proceeding, not already enjoyed by the city; but the only response on the part of the corporation counsel was that the city needed the land at the foot of the street. It is true that while, ordinarily, that portion of the said street at the foot thereof would be properly the subject of a street opening proceeding, in order to acquire title to the fee thereof for street purposes, it being said that the title thereto was not in the city, but claimed to be in the Pierrepont estate, nevertheless the evidence demonstrates so conclusively that the city desires the fee of the street for subway and other purposes, not connected with strictly street uses, that I am satisfied that the fee to that portion of the said street cannot, under the circumstances, be properly acquired in this proceeding, as presented to the court upon this motion, and that the city cannot, under the guise of a street opening proceeding, acquire title in fee to any portion of the said street for subway purposes.

From the testimony taken before the referee herein, I am satisfied, beyond all peradventure, that the purpose for which the city desires to obtain the title in fee to the said street is for subway purposes. The authorities hold that the building of a subway by the city is not a street purpose; that it is a business enterprise, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation. It is built by and belongs to the city as a proprietor, not as a sovereign; that the use made of the street by the city in constructing a subway and operating, or causing to be operated, a railroad therein, is not a "street use," as that term is known in the law. As has been said recently, there is a broad distinction between a municipal purpose and a street purpose. A subway is built for municipal purposes, because it is necessary for the general welfare of the people of the community; it is public in character, sanctioned by its citizens, authorized by the Legislature, and the city has power to construct and pay for it.

A street purpose, on the contrary, is for highway purposes, and any use of the street which improves it as a highway is a proper street use, and sewers draining surface waters, water mains for sprinkling and cleaning, and electric lights are all of them correct street uses. The building of a subway would not help the street as a highway. See Matter of Rapid Transit R. R. Commissioners, 197 N. Y. 81, 90 N. E. 456, 36 L. R. A. (N. S.) 647, 18 Ann. Cas. 366. This being the fact, I am satisfied that the city has not instituted the right proceeding for acquiring the title in fee to the said street for purposes which, to my mind, are quite clear.

A significant feature in connection herewith, as tending to indicate the purpose for which the city desires to acquire the title in fee to the said land, is that the resolution adopted by the board of estimate, as aforesaid, calls for only 50 feet of the street from Court street to 275 feet west of Hicks street, whereas the width thereof is 60 feet, and the

said 60 feet is now being used for all purposes consistent with strictly street uses, and the said 50 feet, sought by the city, is just sufficient for subway purposes.

[3] I am also of the opinion that the resolution aforesaid is of no effect and void, for the reason that it appears by the testimony taken herein that no special benefit will be gained by the objecting property owners by reason of the acquisition of the land at the foot of the street, nor from the proposed change in title, and, under the authorities, this being the case, the proceeding would be a violation of that provision of the Constitution which declares that no person shall be deprived of his property without due process of law. See Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443.

Ordinarily it is assumed that, when property is assessed for public improvements, such improvements will be of peculiar benefit to the property assessed, and that, therefore, the owners do not pay anything in excess of what they receive by reason of such improvement. But I fail to see wherein the objecting property owners will be benefited by the city acquiring the title to the fee in this street. As I understand it, the property owners affected herein, within the area of assessment, have no objection whatever to the city taking title to the fee of the said street for subway purposes under appropriate proceedings; but they do object most strenuously to this proceeding, which would compel them to pay, by way of assessment, for the cost of acquiring the said fee, and contend and insist that the city at large should pay the cost thereof.

I cannot agree with the contention of the learned corporation counsel that the resolution of the board of estimate is alone competent evidence of its meaning. I am clearly of the opinion that the testimony which was adduced upon the hearings before the referee herein, as to the contemplated use of Montague street for subway purposes, is competent, not for the purpose of varying or altering the said resolution, but for the purpose of indicating the motive and intent of the city authorities in seeking to acquire the title to the fee of the said street.

In view of the fact that it is my opinion, based upon the evidence herein, that the city desires to acquire title to the fee of the said street for subway or rapid transit purposes only, I am convinced that it has not instituted the proper proceeding, and that, consequently, the board of estimate and apportionment exceeded its authority in directing the institution of this proceeding, and that its act is illegal and void.

It seems to me that, under the conditions prevailing herein, the public service commission of the First district, in conformity with section 39 of the Rapid Transit Act (Laws 1909, c. 498), should institute a proceeding in behalf of the city to acquire the fee to the lands as aforesaid for the purpose which the testimony, to my mind, so clearly indicates, namely, for a subway, and that it is the only body competent to act.

I am therefore impelled to the conclusion that the city desires to acquire the title in fee to the land, as aforesaid, for subway purposes, and not for street uses. I am also convinced and satisfied that, even if this application were granted and commissioners appointed, the objecting property owners would not be benefited thereby, and hence

that the resolution aforesaid is void and of no effect, and consequently that the application for the appointment of commissioners herein should be denied.

Motion denied.