In the Matter of the Application of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Lands Required for the Opening of Ely Avenue in the Borough of Queens.

FREDERICK AYER et al., Respondents.

Eminent domain — when title in fee may be acquired in condemnation proceedings although party seeking title has limited interest in such property — New York (city of) — power to acquire land for streets vested in city by charter not confined to land for new streets.

1. In the exercise of the power of eminent domain the opinion of the legislature or the tribunal upon which is conferred power to determine the questions of necessity or expediency in the acquirement of private property for public use is political, not judicial, in its nature.

2. An interest in property sought to be condemned held by the party seeking to acquire title is not a bar to a proceeding to acquire a fee title to the same, where the rights of the party seeking condemnation are clear and the necessity for a fee title has been legally determined.

3. The power vested in the city of New York under section 970 of the charter (L. 1901, ch. 466, amd. by L. 1913, ch. 329) to acquire lands for street purposes is not limited to new streets. The language of the statute is definite and certain. It empowers the city in clear and precise terms to acquire for public use any and all lands required for streets, the nature and extent of the title to be acquired to be determined as therein provided.

4. Power to determine the question of expediency in the acquisition of land for streets and the nature and quantity of the estate to be acquired therein, was vested in the board of estimate and apportionment by this section (970).   When that board determines to acquire a fee title to land for a street it is not the province of the courts to determine that an easement is sufficient or in any manner to curtail the determination made by the legislative body.

5. The courts will not impute to the legislature or the discretionary action of municipal bodies clothed with legislative powers other than public motives for their acts; the presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies and will preclude all collateral attack.   Hence the objection to an application made by the city for the condemnation of property for street purposes cannot be sustained on the ground that the property is in reality sought to be acquired for a purpose other than that alleged in the proceedings. (*City of Buffalo* v. *Pratt*, 131 N. Y. 293, followed.)

*Matter of City of New York* (*Ely Avenue*), 168 App. Div. 867, reversed.

(Argued October 4, 1915; decided January 18, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial depertment, entered June 17, 1915, which affirmed an order of Special Term denying a motion for the appointment of commissioners of estimate and assessment in the above-entitled proceeding.

Pursuant to section 970 of the Greater New York charter the board of estimate and apportionment of the city of New York, on the 4th day of December, 1914, adopted a resolution that it deemed it for the public interest that the title to certain lands and premises required for the opening and extending of Ely avenue from Jackson avenue to Nott avenue in the borough of Queens and city of New York should be acquired by the city of New York, and that the title to be so acquired was determined to be a title in fee.   Due notice of the proceedings to acquire title to the lands required and that

the board of estimate and apportionment would consider
a proposed area of assessment, and of a proposed hearing
thereon, was published as required by law, a public hear-
ing was given thereon, and thereupon by resolution of
the board of estimate and apportionment the area of
assessment was fixed and determined pursuant to the pro-
visions of the Greater New York charter.   The board of
estimate and apportionment requested the corporation
counsel to make application to a Special Term of the
Supreme Court for the appointment of three commis-
sioners of estimate, and one of them a commissioner of
assessment, and to take the necessary proceeding in the
name of the city of New York to acquire title as deter-
mined by the resolution of the said board wherever the
same had not been theretofore acquired for the use of the
public.   On the day fixed in the public notice for the hear-
ing of the application to appoint commisssoners, the
respondents, some of whom were owners of certain lands
abutting Ely avenue, and others of whom were owners
of lots included in the area of assessment adopted by the
board of estimate and apportionment, filed answers to the
petition of the city, alleging in substance that the land,
the fee of which was sought to be acquired by the city,
had already been dedicated to the public for street pur-
poses; that the underlying reason for the proceeding was
that Ely avenue was to be used for an elevated railroad,
a part of the rapid transit system of New York city;
that Ely avenue had been for many years maintained as
a public street by the city, and that the city should have
proceeded under the Rapid Transit Act, in which case the
total expenses would be borne by the city.

Ely avenue was laid out as President street on a map
inscribed " Map of the Hunter and Van Alst Farms made
by Peter G. Van Alst dated 1861 situate at Long Island
City, Queens County, N. Y., Trustees of Union College,
Proprietors."   Upon the map, President street (now Ely
avenue) was shown as a street sixty feet in width.   Lots

and plots designated by numbers appear thereon abutting both sides of President street and certain of the lots so abutting were sold with reference to that map.    In 1874 a second map was made inscribed: " Map of the Hunter, Van Alst, de Bevoise Farms situated in the First, Second and Third Wards of Long Island City, Queens County, N. Y., made by Peter G. Van Alst, City Surveyor for the Trustees of Union College, Proprietors.   Dated January 1, 1874.  Filed June 11, 1875." Upon this map Ely avenue was shown as a street eighty feet in width, ten feet on each side of the street having been taken off the lots as the same were laid out on the first-mentioned map. Subsequently, lots were sold according to that map.

It was claimed that the trustees of Union College in November, 1874, conveyed to Long Island City all of the streets included in the tract of land owned by said college.    An examination of the records disclosed that such deed was not recorded and it appears to have been lost. The city asserts that it has no knowledge whether the alleged deed conveyed a fee title to the streets or merely an easement therein.

Attached to the petition presented by the corporation counsel was the affidavit of one Raisman, senior designing engineer of the public service commission for the first district, who deposed that he was acquainted with contracts and specifications prepared by and entered into by the public service commission for the construction of a rapid transit line along Ely avenue from Jackson avenue to Nott avenue, upon which an elevated railroad was to be constructed.   Photographs in the record, as well as the maps, disclose that the ten-foot strips on both sides of Ely avenue have been encroached upon by buildings, stoops, etc.

One Coleman made affidavit that he was the owner of certain land abutting Ely avenue; that in 1906 he erected a fence upon the ten-foot strip of land, which was later removed by the city; that he brought proceed-

ings against the city of New York in the County Court of Queens county in which final judgment was entered in his favor, in which it was adjudged that he was the true, rightful and lawful owner in fee of the strip of land, and the city was enjoined from interfering with any structure he might place upon the property; thereafter Coleman erected a small building upon a part thereof and he has prepared plans for the erection of a building on the ten-foot strip seventy-five feet along Ely avenue, which plans have been approved by the bureau of buildings in the borough of Queens. It also appeared by the petition that there were outstanding titles to parts of the ten-foot strip of land, which had been purchased under the first map of 1861.

*Lamar Hardy, Corporation Counsel (Joel J. Squier, John J. Kearney* and *James Regan Fitz Gerald* of counsel), for appellant. The court, on the application for the appointment of commissioners, had no power to inquire into the motives which actuated the board in adopting the resolution providing for the opening of Ely avenue. (*McCabe* v. *City of New York,* 213 N. Y. 468; *Lahr* v. *Met. El. Ry. Co.,* 104 N. Y. 268; *Matter of New St.,* 215 N. Y. 109.) The determination of the board of estimate and apportionment as to the character of the title which should be acquired is final and conclusive and not reviewable by the court. (*Matter of Fowler,* 53 N. Y. 60; *Wiggins* v. *Mayor, etc.,* 9 Paige, 16; *Matter of William & Anthony Streets,* 19 Wend. 678; *Matter of Albany Street,* 11 Wend. 149; *Matter of Church Street,* 49 Barb. 455; *Harris* v. *Thompson,* 9 Barb. 350; *People* v. *Smith,* 21 N. Y. 595; *Matter of Cooper,* 28 Hun, 515; *Matter of Peter Townsend,* 39 N. Y. 171; *Matter of Sackett Street,* 74 N. Y. 95; *Matter of Boston Road, etc.,* 142 App. Div. 726.)

*John Larkin* and *Ralph S. Hull* for respondents. All of the land sought to be acquired herein has already been

4

ceded to the city or dedicated to use as a public street. (*City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Flack* v. *Village of Green Island*, 122 N. Y. 107; *Matter of Bragaw St.*, 141 N. Y. Supp. 987; *Matter of Hunter*, 163 N. Y. 542; *Newton* v. *City of Dunkirk*, 121 App. Div. 296; *Gerard on Real Estate* [5th ed.], 819–823; *Matter of Pearsall St.*, 135 N. Y. Supp. 763.) The provisions of the New York city charter for opening streets do not apply to streets already ceded or dedicated to street uses. (L. 1913, ch. 329, § 970; *Matter of Montague St.*, 87 Misc. Rep. 120; *Matter of Eighty-fifth St.*, 45 Misc. Rep. 162; *Matter of East 161st St.*, 52 Misc. Rep. 596; *Matter of Neponsit Ave.*, 77 Misc. Rep. 246; *Palmer* v. *Larchmont El. Co.*, 158 App. Div. 231; *Matter of R. T. R. R. Co.*, 197 N. Y. 81; *Matter of New St.*, 215 N. Y. 109; *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268; *Appleton* v. *City of New York*, 163 App. Div. 693.) The real purpose of this proceeding, as conceded, found and affirmed unanimously, is not to acquire title for street purposes, but for the city's rapid transit system; hence the proceeding will not lie. (*Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81; *Story* v. *N. Y. El. Ry. Co.*, 90 N. Y. 122; *Lahr* v. *Met. El. Ry. Co.*, 104 N. Y. 268; *Craig* v. *Rochester, etc., R. R. Co.*, 39 N. Y. 404; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298; *Kellinger* v. *F. S. St. Ry. Co.*, 50 N. Y. 206; *Forbes* v. *R., W. & O. R. Co.*, 121 N. Y. 505; *City of Buffalo* v. *Pratt*, 131 N. Y. 293; *Rasch* v. *Nassau El. Ry. Co.*, 198 N. Y. 385; *Lincoln S. D. Co.* v. *City of New York*, 210 N. Y. 34; *Appleton* v. *City of New York*, 163 App. Div. 680; *Matter of Montague St.*, 87 Misc. Rep. 120.)

HOGAN, J.   The application made by the city for the appointment of commissioners of appraisal and assessment was opposed by respondents for the reasons: *First*, that Ely avenue had been ceded to the city as a street and had been improved and maintained as such for many

years; consequently the land sought to be condemned was not required for street purposes within the meaning of section 970 of the Greater New York charter and the proceeding at bar was not authorized by law; *secondly*, that the proceeding was in reality commenced to acquire title to land in Ely avenue for the purpose of the construction of an elevated railroad structure therein and not for street purposes; *thirdly*, that the proposed assessment is void as a large part of the area to be assessed will not be benefited by the taking of the land.   The justice presiding at Special Term held that the proposed condemnation was unlawful in that the proceeding was not one to acquire title to land for the opening and extending of Ely avenue, but was in reality a proceeding to acquire title to the end that Ely avenue may be closed and contracted to the extent which the building of an elevated railway structure would entail, and the proposed taking being unlawful parties liable to assessment had a right to object to the institution of the proceeding, and thereupon, for the reason stated, denied the application.   As to the first ground of objection above stated, the justice said: " I have always thought that the exercise of the right of eminent domain for street purposes might well be limited to the acquisition in the case of new streets of a perpetual easement rather than a fee, and although I recognize that a different method has been allowed by the legislature, I think it should not be extended to old streets unless in exceptional cases."

The Appellate Division, Mr. Justice Putnam writing for the court, on that subject said: " The Legislature has wisely empowered the city of New York by condemnation to take either an easement or a fee.   (City Charter, § 970.)   This is not only because a uniform municipal ownership in fee of streets (as already exists in the streets from old Dutch highways) might simplify urban rights, but doubtless in view of the greatly increased uses, ' in, over, upon or under ' metropolitan streets.   If the ques-

tion were reviewable by the courts, much may be said for the greater dignity, permanence and artistic effect of streets and highways owned in fee and therefore fully controlled by the authorities, as has been the immemorial practice of countries under the civil law. (*Mitchell* v. *Bass*, 33 Texas, 259.)

" By usage derived from England, the public has but a bare right of passage, under the theory which favored the proprietary right of the lord of the manor, as against the continental idea of a public thoroughfare, owned, laid out, improved and embellished by the State."

As to the other objections sustained by the justice at Special Term, the Appellate Division affirmed the decision made. Upon the argument of this appeal, counsel for respondents while seeking to sustain the decisions below for the reasons there stated, submitted that the provision of section 970 of the Greater New York charter so far as it authorizes the city to acquire real property for streets is limited to unopened or new streets, and Ely avenue being an open street and the city having use of the same for street purposes, land for the opening of the same is not required. In support of his contention he cited three Special Term cases (*Matter of City of New York* [*Montague Street*], 87 Misc. Rep. 120; *Matter of City of New York* [*Eighty-fifth Street*], 45 Misc. Rep. 162; *Matter of Ninety-first Street*, unreported.)

In view of the conflict of opinion between the decisions cited and the courts below in the case at bar, we deem it important for future guidance to finally determine the question in this case.

That the state, in its sovereign capacity, is vested with the power of eminent domain, and the legislative department of the government may determine when the power may be exercised and delegate such power to a municipality is elementary. The legislative authority claimed by the city and questioned by the respondent in this case is found in section 970 of the charter (L. 1901, ch. 466,

amd. L. 1913, ch. 329), which, so far as material, reads as follows:

" The city of New York is authorized to acquire title either in fee or to an easement, as may be determined by the board of estimate and apportionment, for the use of the public to all or any of the lands required for streets, parks, play grounds, approaches to bridges and tunnels, sites or lands above or under water for bridges and tunnels, and sites or lands above or under water, for all improvements of the navigation of waters within or separating portions of the city of New York, or of the water fronts of the city of New York, or part or parts thereof, heretofore duly laid out upon the map or plan of the city of New York, of the city of Brooklyn, or Long Island City or of any of the territory consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, or hereafter duly laid out upon the map or plan of the city of New York, as herein constituted, and to cause the same to be opened, or to acquire title as above stated to such interests in lands as will promote public utility, comfort, health, enjoyment, or adornment, the acquisition of which is not elsewhere provided for.   *   *   *"

It is contended by respondents that the power vested in the city to acquire lands for street purposes, under the section quoted, is limited to new streets. In support of that proposition our attention is called to the following language of the charter, " and cause the same to be opened," as indicating the intention of the legislature to exclude existing streets from the operation of the statute. I do not assent to such construction. The language quoted neither limits nor enlarges the power delegated to the city which was to acquire lands for streets for the use of the public. The use of the public could only be consummated by the opening and improvement of land acquired for the benefit of the municipality and its inhabitants. The authority conferred upon the city to acquire

land for streets included the power incidental thereto to do every act essential to carry out and complete the purpose for which the primary power was granted.  The charter provision must be read and understood according to the natural and most obvious import of the language found therein and recourse cannot be had to a subtle or forced construction for the purpose of limiting the operation of the same to new streets.  The language of the statute is definite and certain, its meaning is not obscure. In clear and precise terms it empowers the city to acquire for public use any and all lands required for streets, the nature and extent of the title to be acquired to be determined as therein provided.  The construction contended for by respondents would require us to do violence to the plain words of the statute and read into the law exceptions in conflict with the language of the same.

To adopt the construction sought by respondents would in effect result in the insertion of the word " new " in the statute and a determination that the city of New York following out the general policy there prevailing as to the ownership of a fee title in streets has been denied legislative power to acquire title to existing streets.  The statute is not susceptible of such construction.  The power conferred upon the city to acquire all or any of the land required for streets is in substance the power which was conferred upon the board of street opening of the city (Laws of 1887, chap. 320) to acquire by condemnation for park purposes " any and all lands  *  *  *  which said board shall deem necessary  *  *  *  for the laying out  *  *  *  of any parks so selected," which law was considered by this court.  (*Matter of Board of Street Opening*, 133 N. Y. 329.)  In that case the city sought to condemn land known as St. John's Cemetery, owned by Trinity Church, which it was claimed by the church could not be acquired for a park under the law of 1887. This court held that in the absence of express *prohibition* in the law, cemetery lands under the general provisions

of law authorizing the construction of streets and parks would not be exempt from invasion and sustained the right of the city to acquire the land in question.

In *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo* (200 N. Y. 113) the railroad company, plaintiff, was the owner in fee of land upon which its tracks were constructed and in use. The city of Buffalo determined to take and appropriate land and property necessary to lay out and extend a street known as Delevan avenue, which would embrace land sixty-six feet wide across the land of the plaintiff. Under the charter of the city, upon the payment of the award the fee of land thus acquired vested in the city. This court held that the city could acquire the fee title to the land and all interest therein subject to any easement for railroad purposes in the plaintiff. In *Matter of N. Y. & H. R. R. Co.* v. *Kip* (46 N. Y. 546) the premises sought to be condemned consisted of a piece of property in the city of New York, owned by Kip, but held under lease from him which did not expire for seven years. Objection to the proceeding was made by Kip that the applicant being in possession under the lease the statute did not authorize a proceeding to condemn the reversion or to secure the fee of the property to meet the future requirements of the applicant. The objection was overruled. The case was again before this court in an action in equity to restrain the condemnation proceedings (*Kip* v. *N. Y. & H. R. R. Co.*, 67 N. Y. 227), wherein the additional fact appeared that the applicant had leased its road and franchises to the New York Central for a term of four hundred and one years and had also assigned the Kip lease to the lessee. Kip, the plaintiff, contended that defendant had thereby waived and abrogated all right or interest to prosecute the proceeding. A demurrer to the complaint in the action was sustained.

These cases, while not directly in point, seem to be applicable to the question in so far as they decide that an

interest in property sought to be condemned held by the party seeking to acquire title is not a bar to a proceeding to acquire a fee title to the same, where the rights of the party seeking condemnation are clear and the necessity for a fee title has been legally determined.

In *City of Buffalo* v. *Pratt* (131 N. Y. 293) the right of the city of Buffalo to acquire the fee title in a public street known as " The Terrace " which had been used as a street for many years and in which the city had an easement was sustained.   A more complete statement of the facts in that case will appear later in this opinion.

In *Matter of City of New York* (174 N. Y. 26), wherein section 970 of the charter was under consideration together with chapter 986, Laws of 1895, this court held that as to certain property for a bridge and its structural approaches, the city took title to the property in fee simple absolute while as to lands condemned for the widening of existing streets (in the same proceeding) the city acquired a fee burdened with a trust to keep and use the lands for street purposes.

The record discloses that the deed from the trustees of Union College to Long Island City was not recorded and the original deed cannot be found.   The city disclaims knowledge whether the deed conveyed a fee or an ease. ment in the street.   That fact in connection with the result of the action brought by Coleman against the city were proper subjects to be considered by the board of estimate and apportionment upon the question as to the nature of the title the city should acquire in the lands in question.   Assuming the deed conveyed a fee title, what quantity of land was conveyed — a street of the width of sixty feet or eighty feet ?   Upon that question the record is silent.   Assuming that the street was conveyed to the city, but by reason of the loss of the deed and failure to record the same the fact cannot be established, what harm can arise by this proceeding to an abutting owner who does not claim any interest in the fee of the street ?   If the

deed conveyed a fee title to a street eighty feet in width, the adjudication in favor of Coleman that he was the true and lawful owner in fee of a part of the land in Ely avenue within the eighty-foot street and that the city should be restrained from interfering with his possession of the same is evidence of a title in him superior to any title of the city.

It is the established law by numerous decisions of this court that in the exercise of the power of eminent domain the opinion of the legislature or the tribunal upon which is conferred power to determine the questions of necessity or expediency in the acquirement of private property for public use is political, not judicial, in its nature. (*People v. Smith*, 21 N. Y. 595; *Matter of Townsend*, 39 N. Y. 171; *Matter of Fowler*, 53 N. Y. 60; *Matter of Union Ferry Company*, 98 N. Y. 139; *City of Buffalo* v. *Pratt*, 131 N. Y. 293; *Matter of City of New York*, 190 N. Y. 350–357.) In *Matter of City of New York*, Chief Judge CULLEN succinctly stated the rule as follows: "It is the settled law of this state that the character and quantity of the estate in lands to be acquired for public use rests wholly in the determination of the legislature."

Power to determine the question of expediency in the acquisition of land for streets and the nature and quantity of the estate to be acquired therein, was vested in the board of estimate and apportionment by section 970 of the Greater New York charter. The exercise of that power was not limited to new streets, but extends to all streets. When the board determines to acquire a fee title to land for a street it is not the province of the courts to determine that an easement is sufficient or in any manner to curtail the determination made by the legislative body. If the existing law is harsh or unreasonable or should be limited to old streets only in exceptional cases, the legislative department is the body charged with a consideration of such a proposition and the only department authorized to amend or change the law.

The second objection made by respondents, "that the proceedings are in reality commenced to acquire title to land in Ely Avenue for the purpose of the construction of an elevated railroad structure therein and not for street purposes," was sustained by the courts below. The declared reason, as appears from the resolution of the board of estimate and apportionment as well as the petition presented to the court, was that the premises to which title was sought was deemed by the board necessary, useful and proper for the public interests and convenience for the purposes of a street, and that the street had been laid out on the map or plan of the city duly certified and pursuant to law. The petition also recited that the necessary steps required to be taken in the proceeding were duly had. The proceedings if conducted to a determination will result in the acquisition of lands for use as a street. Had the city undertaken, under section 970 of the charter, to condemn the land in question for the purpose of constructing an elevated railroad, the court would no doubt dismiss the proceedings for the reason that such was not a street purpose. While the affidavit of Mr. Raisman declares that the public service commission contemplated the construction of a rapid transit line in the nature of a structure for an elevated railroad in Ely avenue, such structure has not been erected. The intention of the public service commission has not been carried out and, for aught we know, it may not be perfected. Even though the intention of the public service commission should be carried out, the abutting owners on Ely avenue who may be awarded damages incident to the condemnation of the land for street purposes will not be foreclosed from a recovery of damages arising from the erection and maintainance of an elevated railroad. (*Matter of City of New York* [*New Street*], 215 N. Y. 109.)

The courts below totally ignored the determination appearing in the resolution of the board of estimate and

apportionment and the facts set out in the petition, and said in substance that the city through the board of estimate and apportionment had been guilty of wrong by seeking to secure the condemnation of land for street purposes, whereas its real motive was to acquire the same for railroad purposes.

This court has recently held that the courts will not impute to the legislature or the discretionary action of municipal bodies clothed with legislative powers other than public motives for their acts; that the presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies and will preclude all collateral attack (*McCabe* v. *City of New York*, 213 N. Y. 468), and this rule has long been established by decisions of this court. (*People* v. *Draper*, 15 N. Y. 532, 545; *Matter of Townsend*, 39 N. Y. 171; *Matter of Fowler*, 53 N. Y. 60; *People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569; *Waterloo Company* v. *Shanahan*, 128 N. Y. 345.) We may also in support of this proposition refer to the language of Judge O'BRIEN of this court in *Talcott* v. *City of Buffalo* (125 N. Y. 280, 288): "Whatever evils may exist in the government of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty must necessarily be temporary compared with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce."

In *City of Buffalo* v. *Pratt* (131 N. Y. 293, *supra*) the city of Buffalo sought to acquire the fee in a street which had been used as such for many years, under the provisions of its charter authorizing it to take fee title in public streets. The defendants, Pratt and others, were the owners of the fee of a portion of the street in front of their respective premises. An examination of the record in that case discloses that in their answer they alleged the city was not seeking to acquire the lands in question

for a street but to enable it to carry out a contract between the grade crossing commissioners and the New York Central and Hudson River Railroad Company, which was alleged to be in excess of the powers of the commissioners and void. The answer contained the specific allegation "that the contract provided amongst other things for the excavation by said railroad company of a cutting through and along said Terrace and the construction therein of railroad tracks; that in truth and in fact the procceeding is not instituted by said applicant in good faith nor for the purpose of acquiring the fee of said premises for public streets, but solely for the purpose of enabling compliance with the said illegal and unauthorized contract so made by the said commissioners." The objections so made were overruled and from the decision an appeal was taken. When the case reached this court, Judge GRAY, writing for the court, said: "The object of the city in seeking to acquire the fee in this street is not disclosed and it is not very material." The order appealed from which sustained the Special Term in overruling the objections made by defendants was unanimously affirmed by this court. This case is not only very much like unto the case at bar, but the decision is conclusive upon the question and supports the decision here that the courts below in sustaining the objections of respondents were in error.

The determination we have reached in this case renders unneccessary a discussion of the third objection made by respondents.

I recommend that the order appealed from be reversed, with costs to appellant in the Appellate Division and in this court, and that the proceeding be remitted to the Special Term for the appointment of commissioners as prayed for in the petition.

HISCOCK, CHASE, CUDDEBACK, CARDOZO and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., not sitting.

Order reversed, etc.