*In re* PETITION OF THE CITY OF DETROIT FOR A PARK SITE.

CITY OF DETROIT *v.* HARTNER.

1. EMINENT DOMAIN — DETROIT CHARTER — POWERS OF APPELLATE COURT.

On reviewing the judgment in condemnation proceedings under the Detroit city charter (tit. 8, chap. 1, §§ 10-14), the Supreme Court does not hear the case *de novo*, and therefore can do no more than affirm, or, for any substantial error, reverse the judgment and grant a new trial.

2. SAME — APPEAL AND ERROR — QUESTION NOT RAISED IN COURT BELOW.

A question not raised in the court below might well be refused consideration in the Supreme Court as not falling within a disputed point to which exception was taken or within any objection or ruling in the case.

3. SAME — PETITION — VALIDITY — PURPOSE FOR WHICH LAND IS TAKEN.

A petition by the city of Detroit to condemn land for park purposes, *held*, not void although the city intended to also use the land for sewer and boulevard purposes.

4. SAME—DAMAGES—TRIAL—INSTRUCTIONS.

Where there was testimony to show that the parcels of land sought to be condemned are suitable for platting purposes, the instruction of the trial court to the jury that in placing a value upon it they were to value it just as it is now, and that the testimony as to projected platting and selling and the income therefrom was to be considered for the purpose of ascertaining its present value for said purpose, *held*, not open to the objection that it was too narrow.

5. SAME—AWARD WITHIN EVIDENCE CONCLUSIVE.

Where the compensation awarded by the jury is within the evidence, it cannot be disturbed, on review in the Supreme Court.

Appeal from recorder's court of Detroit; Jeffries (Edward J.), J.   Submitted April 18, 1924.   (Docket No. 103.)   Decided May 8, 1924.

Condemnation proceedings by the city of Detroit against John Hartner, Elizabeth Hartner and others for a site for park and other purposes.   From a judgment confirming the award of the jury, defendants Hartner appeal.   Affirmed.

*Havelock J. Northmore* (*Atkinson & Schweikart,* of counsel), for appellants.

*George A. Kelly,* Corporation Counsel, and *John R. Watkins,* Assistant Corporation Counsel, for appellee.

WIEST, J.   Exercising the right of eminent domain the common council of the city of Detroit declared it necessary to take certain designated private property "for a site for park purposes and for municipal build-

ings to be thereon constructed." Appropriate proceedings were taken in the recorder's court, a jury found the public necessity for the purposes alleged, and awarded compensation to the several property owners. John and Elizabeth Hartner owned two parcels of land, in part taken, were awarded $116,341.51, and, feeling aggrieved, have appealed, claiming the real purpose of the city is to acquire a way for the second largest sewer in the world and the compensation awarded is inadequate. The first ground of grievance does not appear to have been raised at the trial but, it is said, the case is heard *de novo* in this court and, therefore, can be heard here.

The charter provisions relative to an appeal constitute a curious mix-up of law and equity terms and procedure. Under the charter an appeal is to be perfected and prosecuted as an appeal in chancery, "as near as may be, subject to the provisions of this chapter." Detroit City Charter, tit. 8, chap. 1, § 12. Section 13 permits an appellant to settle a case, "showing the material evidence and instructions given to the jury, bearing upon any disputed points to which exception was taken, and the objections, rulings and exceptions in the case." Section 14 provides that this court "may affirm, or, for any substantial error, reverse the judgment, and may grant a new trial."

In the recorder's court the verdict of the jury may be set aside by the court and a new trial ordered as in civil suits at law in the circuit courts of this State, and motions for a new trial or to arrest the proceedings may be made. Sections 10 and 11 of the mentioned title and chapter.

Counsel for the defendants contend:

"The law is well settled that appeals in condemnation cases are heard *de novo* and that the court will pass upon both questions of fact and law."

In this they are partly in error.    The charter provisions quoted negative the idea of a hearing *de novo*. Questions of law relative to the admission or exclusion of evidence and instructions given to the jury and the objections, rulings and exceptions in the case present the issues before this court.    This court can do no more than affirm, or, for any substantial error, reverse the judgment and grant a new trial.    Upon the subject of review in eminent domain proceedings see *Township of Custer* v. *Dawson,* 178 Mich. 367.

The point presented here not having been raised in the court below and, therefore, not being made to appear in the case as settled might well be refused consideration as not falling within a disputed point to which exception was taken or within any objection or ruling in the case.    We have concluded, however, to pass on the point.

Under the condemnation awarded the city has an undoubted right to go ahead and establish a sewer beneath the parkway.    *Warren* v. *City of Grand Haven,* 30 Mich. 24.    A legitimate purpose may not be defeated because, if successful, it carries with it another legitimate right as an incident thereto.    It would have been senseless for the city to have joined in this proceeding condemnation for sewer purposes, for right to establish the sewer in the parkway comes to the city as of right if the instituted proceeding stands.    It appears to have been the intention of the city authorities to establish a parkway to connect certain parks and ultimately to circle the city.    The plan reaches far into the future.    This laudable purpose is not rendered abortive by the essential need of the city to have the contemplated sewer.

It is also claimed that the purpose of the city is to establish a boulevard instead of a park.    It is clear from the evidence that the purpose is to establish a parkway beneath which the great sewer will be

built.   Of course, a parkway is intended in part for the purpose of public travel.   As stated in 3 Dillon, Municipal Corporations (5th Ed.), § 1150:

"A street may in part unite the two purposes, one to furnish a way for travel and the other as a park or public place.   These elements have frequently been united, and there are many cities where roads, boulevards, and avenues have been opened for the purpose of travel, and in connection with such use, lands have also been acquired for the sole purpose of furnishing ample space in order that the enjoyment of the street itself by the inhabitants of the municipality may thereby be enhanced."

We think the designation of the purpose in the petition filed was sufficient and is not to be defeated by the fine-spun theory that a parkway is essentially a boulevard, and a boulevard constructed with park-like features with sides or center for shade trees, flowers, seats, and set aside as a place for the resort of the public for recreation, air and light does not fall within the old-time designation of park purposes.

We find no merit in the points urged, but beyond this, the objection to the proceedings cannot be sustained on the ground that the property is in reality sought to be acquired for a purpose not alleged in the proceedings.   *In re City of New York (Ely Avenue)*, 217 N. Y. 45 (111 N. E. 266).

This brings us to the question of compensation. The parcels of land owned by defendants are suitable for platting purposes and it is claimed:

"Now, it appears from the evidence in the case at bar that the most advantageous and profitable use that the respondents could make of their property would be to subdivide it and sell it as lots, and the testimony further shows that if they did this they would realize approximately $208,000.   Is there any legal reason why they should be compelled to sell their property as acreage to other parties and lose the benefit of platting the property themselves, selling it and receiv-

ing the profits of such sales?   The jury, of course, would have a right to take into consideration the delay in making sales, the work necessary to secure collections, and other items of subdivision expenses, other than the cost of platting, sewers and sidewalks, which were included in the estimates of witnesses for the respondents.   Had the jury been allowed to consider the value of this land as subdivided, it would unquestionably have rendered a larger verdict.   The testimony is undisputed that property surrounding the property in question has been subdivided and readily sold.   If the respondents had not been interfered with by these condemnation proceedings, who will question that they would have platted their property, sold it as lots and realized a much larger sum therefrom than the verdict of the jury?"

The recorder instructed the jury upon this subject:

"Now the rule of law is this: What is the present full, fair market price of the property for the best use it can be used.   Now the owners of this property are entitled to the present, full, fair, market price of the property for the best purposes for which it can be used, and, as I said before, I think it can be fairly inferred in this case that its best use is to plat it and sell the lots at retail.   In other words, it will bring more money from that than from any other use they can put it to.   Now that is what they claim.   *   *   *

"In placing a value upon this property, you place the value just as you find it now, contemplating all the purposes for which it can be used best, giving it the value that it would sell for under this test, contemplating the best use that can be made of it.

"The purpose of allowing the witnesses to go on and project into the future a plat of the acreage out there was to show not only the present value, but to show its present value for the purposes for which it could be used.   Now you can readily see that when a man has ten acres of land and he is going to plat it, there are certain contingencies that must arise before he realizes on it.   There is the cost of putting it on the market.   There is the investment.   There are many things that you cannot tell just how they will turn out.   Maybe they will be this, and maybe they will be that.   It is, to some extent, more or less of a

speculation as to just exactly what a man would realize in dollars and cents at a certain period when he has put in improvements and changed the character and aspect of his property up there.  So you see, gentlemen of the jury, if you roam off into that field, you are in a field of uncertainty.  You should only take that testimony and that projected platting and selling and the income from it, to ascertain what you would pay for it in its naked state as acreage before you started to do it.  Therefore, when the question was asked, what is that worth an acre now as it stands for the purposes for which it can be used best, platting,— that is the basis of your calculation."

It is claimed the rule stated by the court is too narrow.  The rule seems to be well settled in accordance with the instruction given by the trial judge and in this connection we quote from *Pennsylvania, etc., R. Co.* v. *Cleary*, 125 Pa. St. 442, 451 (17 Atl. 468, 11 Am. St. Rep. 913) :

"It is proper to consider for what purpose it may be used to advantage, in order to determine for what price it will sell.  It may be saleable as a site for the erection of a hotel, a factory, a dwelling house or a wharf, but it is not proper to lay before the jury proof of what the hotel or other structure would cost, together with proof of the value of the lot with such structure upon it, and treat the difference between these sums as the value of the lot.  Such a method would be speculative and fanciful.  Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately.  It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted, but it is the tract, and not the lots into which it might be divided, that is to be valued.  *  *  *
"The jury are to value the tract of land, and that only.  They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot.  A speculator or investor in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing.  A jury

should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled and the court should have drawn the attention of the jury to it so as to have left no room for uncertainty on their part. They should have been told that they had nothing to do with the subdivision of this tract, the price of the lots or the probability of their sale; but that they were to ascertain the fair selling value of the land before and after the entry by the railroad company, in order to determine the actual damage done to its owner."

The compensation awarded by the jury is within the evidence submitted and cannot be disturbed. We find no reversible error.

Affirmed, with costs against appealing defendants.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.