Joseph A. Sarafite, J.
The Port of New York Authority petitions for an order to condemn certain real property for public use for World Trade Center purposes. It does so as the agent of the States of New York and New Jersey to effectuate a port development project mandated by legislation (L. N. Y., 1962, ch. 209; L. N. J., 1962, ch. 8). The project involves the operation of the Hudson Tubes and a World Trade Center as a unified project.
In 1963, the Court of Appeals held that the concept of the World Trade Center represents a public purpose and that the benefit from this facility “ is not too remote or speculative as to render the means chosen to achieve it patently unreasonable ’ ’ (Courtesy Sandwich Shop v. Port of N. Y. Auth., 12 N Y 2d 379, 388, app. dsmd. 375 U. S. 78, rehearing den. 375 U. S. 960); and that the statute is valid and constitutional (id. p. 388). The court also held that, under the statute, the Port Authority is obliged to create the World Trade Center, has no discretion to abandon it and is directed to proceed rapidly to accomplish it (id., p. 393).
At the time of the Courtesy decision, the Port Authority had only taken the Hudson Tubes and had not yet submitted a final plan for the World Trade Center although the Court of Appeals had before it some evidence of the type of Center contemplated by the Port Authority.
*367 The World Trade Center is defined by section 2 of the enabling legislation as: “ that portion of the port development project constituting a facility of commerce consisting of one or more buildings, structures, improvements and areas necessary, convenient or desirable in the opinion of the port authority for the centralized accommodation of functions, activities and services for or incidental to the transportation of persons, the exchange, buying, selling and transportation of commodities and other property in world trade and commerce, the promotion and protection of such trade and commerce, governmental services related to the foregoing and other governmental services ” (emphasis added).
Section 12 provides: “ All details of the effectuation, including but not limited to details of financing, leasing, rentals, tolls, fares, fees and other charges, rates, contracts and service, of the world trade center * * * by the port authority shall be within its sole discretion and its decision in connection with any and all matters concerning the world trade center * * * shall be controlling and conclusive ” (emphasis added).
In the Courtesy case the property owners expressed fears that the Port Authority may illegally seize property for unauthorized public use. The court held at page 391: “ [T]he condemnation procedures prescribed by statute fully protect the respondents and others in like position against any taking for nonpublic purposes in violation of the Port Development Project Law.”
Thus, the only issue left open by the Court of Appeals for further judicial determination is whether the actual plan of the Port Authority for the carrying out of the mandate of the statute provides for nonpublic purposes and therefore violates the terms and conditions of chapter 209.
Subsequent to the decision of the Courtesy case the Port Authority announced a plan for the construction of World Trade Center twin towers. In September, 1964, certain property owners on behalf of themselves and of all other taxpayers and owners of office buildings similarly situated in the Borough of Manhattan, sued for a declaratory judgment adjudging, among other things, that the proposed development is not authorized by chapter 209 of the Laws of 1962 and is beyond the power of the Port Authority to construct. The Port Authority filed an answer to this complaint denying its material allegations. (These pleadings are now before this court; in this proceeding serving different functions, the complaint is treated as an answer to the petition and the answer as a reply thereto.)
*368 Thereafter, the plaintiffs in that action obtained written answers of the Port Authority to written interrogatories submitted by them, and on September 23 and October 7, 1965, also orally examined before trial Richard C. Sullivan, as employee of the Port Authority and Director of the World Trade Center. The subject matter contained in these pretrial discovery procedures show, in substance, the Port Authority’s determinations of the project’s location, size, allocation of space and categories of tenants.
The petition for condemnation now before this court alleges that on September 9, 1965, the Port Authority, by resolution duly adopted on said date, has found and determined that ‘ ‘ it is necessary for public use for World Trade Center purposes to acquire title in fee simple absolute ” of the property described in the petition and further, authorized the institution of a condemnation proceeding to acquire title to the property pursuant to the procedure set forth in chapter 819 of the 1947 Laws of New York.
The parties plaintiff in the declaratory judgment action and one other property owner have filed answers to the petition, alleging denials and purported defenses. On October 25, 1965 in open court, the parties agreed that all the proceedings theretofore had in the action for declaratory judgment would “be available in this proceeding as if they were had in this action.” As a consequence, in the instant proceeding three answers are interposed: an answer by 25 Broad Street Realty Associates et al., pleading substantially the same allegations as their complaint in the collateral action; another — the complaint of Sarah and David Melnnes et ah, interveners in the collateral action — which is deemed an answer here; and the third, a separate answer by National Radio Dealers Supply Co., Inc. In substance these answers deny that the Port Authority has the right to elect to acquire the property described. The other allegations, except insofar as they contest a taking for a public use, raise no justiciable issues in this proceeding and the court now so holds. (These other allegations allege in substance that the Port Authority will use its tax-exempt status in competition with private realty interests; that the Port Authority has entered into negotiations with foreign States without the consent of the Congress of the United States; that the Port Authority has agreed with the City of New York to receive favored tax treatment at a considerable loss of tax revenue to the city; and that the planning and construction of the buildings are in excess of the reasonable purpose and scope of the legislative enactment and constitute mere speculation with public funds.)
*369 The Port Authority now moves for summary judgment upon said pleadings and depositions. It contends that neither the answers nor other papers filed by respondents raise any issue of fact that requires a trial. The issues, if any, claims the Port Authority, fall into two classes: those legal issues which must be dismissed as a matter of law under the Courtesy case and issues disposed of by proof in the Port Authority’s answers to interrogatories and oral examinations before trial in the action for declaratory judgment.
The condemnees argue on the other hand that the papers raise issues that cannot be resolved except on a plenary trial. Furthermore, they claim the Courtesy case (supra) is “ utterly inapplicable ”. They contend that the Courtesy case merely held that on the face of the statute there was a public purpose manifested.
In sum, they allege the area to be taken will actually be used for purposes other than for centralization of world trade facilities and that the public benefit resulting therefrom will be subordinated and incidental to the primary., object of the production of revenue. The measure of available proof, however, to meet their burden of proof, they allege, “ is not now before this court ” and is a question to be decided on a trial.
In the opinion of the court, the present plan submitted by the Port Authority contemplates a taking for a public purpose and is not in violation of the statute authorizing the World Trade Center. The respondents have urged numerous arguments against the project and have expressed dire predictions and speculations as to the future of it; but none of this, nor any other matter in their papers, raises any triable issue of fact. The fact that there are changes between the plan that was before the Court of Appeals in the Courtesy ease and the plan now before this court does not convert the present plan into a taking for nonpublic purposes. The differences between the two plans are not relatively substantial and are of no legal significance. The primary public purpose still remains and the plan conforms with the statute. Any provision for revenue production still remains incidental to the primary purpose.
The law is clear “ that the question of necessity or expediency of a taking in eminent domain lies within the discretion of the Legislature and is not a proper subject of judicial review ” (City of Mount Vernon v. East Hudson Parkway Auth., 45 Misc 2d 471, 478, affd. 23 A D 2d 849, mot. for lv. tb app. den. 16 N Y 2d 483), and it is also clear that in this case the Port Authority is acting as the Legislature’s agent in determining the precise details of any plan to effectuate the intent of the Legislature.
*370 In Matter of City of New York (Ely Ave.) (217 N. Y. 45 [1916]), Hogan, J., writing for the Court of Appeals, stated, at page 57: ‘ ‘ It is the established law by numerous decisions of this court that in the exercise of the power of eminent domain the opinion of the legislature or the tribunal upon which is conferred power to determine the questions of necessity or expediency in the acquirement of private property for public use is political, not judicial, in its nature.” And, at page 59: “ This court * * * will not impute to the legislature or the discretionary action of municipal bodies clothed with legislative powers other than public motives for their acts; that the presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies and will preclude all collateral attack (McCabe v. City of New York, 213 N. Y. 468), and this rule has long been established by decisions of this court.” (See, also, Matter of Public Serv. Comm., 217 N. Y. 61.)
In the light of the foregoing, the court is of the opinion that the papers before it fail to make any showing of triable issues of fact sufficient to warrant a plenary trial. Accordingly, the application for summary judgment and the application to condemn are granted.